WOOD, et al. v. ASHBY, et al.

No. 7667.   Decided October 7, 1952.   (253 P. 2d 351.)

See 28 C. J. S., Easements, sec. 84. Effect on easement of division of dominant tenement. 17 Am. Jur., Easements, sec. 126; 34 A. L. R. 972.

*Wilson & Wilson*, Ogden, for appellants.

*Ralph J. Lowe*, Ogden, for respondents.

McDONOUGH, Justice.

This is an appeal from a lower court judgment quieting title to a certain strip of land in the plaintiff and restraining defendants from claiming any right of way over such land except one for road purposes across the land in controversy at a point where a gate exists in a fence along the southern portion of the strip. In order to illustrate the situation we insert a diagram:

In 1907 one Traugott owned the entire piece of land diagramed above. James G. Wood, desiring to obtain the ground water from the above section of land for culinary purposes, bought strip A from Traugott. Such strip contained an underground collection pipe along its northern border which led to a collection well on its west end. The southern two-thirds of strip. A lay under a public highway.

The conveyance from Traugott to Wood was by warranty deed and conveyed strip A

"reserving, however, to said grantors a right of way for road purposes across the above described premises."

In 1917 Traugott, by warranty deed, conveyed an area consisting principally of A, B, and C to John H. Clark

"subject to rights conveyed by that certain deed executed by John E. Traugott and his wife Mary Ann Traugott to James G. Wood * * *."

John H. Clark then conveyed the entire area to Sanford Harrop in 1932 by warranty deed but made no mention in the transaction or deed as to any rights which existed on the part of Wood, or his successors in interest. Harrop, by warranty deed, conveyed the entire premises to defendant Ashby in 1947 and again nothing was stated in the deed as to any existing rights of James G. Wood. Ashby later conveyed C and that part of A immediately south of C to defendant Christensen. No mention of the rights of Wood was made. The present action arose when the defendants, desiring to subdivide the land, construct dwellings thereon, and to obtain greater access to the highway, claimed an unrestricted general right of way over and across any and all portions of strip A. Plaintiff, who is the successor in interest to James G. Wood, attempted to halt defendants by erecting a fence along the northern boundary of A. Defendants commenced to remove such fence and this action resulted.

The record reveals that a prior fence exists along the northern border of the highway. This fence contains a gate located approximately one-fourth of the length of A from the west boundary of A. Such gate was evidently used as a means of ingress and egress by Traugott's successors in interest. There is no recognizable division line between A and the other sections of land. Plaintiffs used A for water gathering purposes only—it not being economically feasible

for plaintiffs to farm the lone sliver of land. Since part of A lay north of the fence and adjacent to defendants' land, it was farmed by defendants and their predecessors in interest. The record reveals that permission was obtained from plaintiffs to farm the land in this manner, as long as such activity cause no interference with the underground collection pipe. (Because of *these liberties* defendants claim an unrestricted right to cross over A at any point.)

Basically, defendants contend that although the deed from Traugott to Wood conveyed the fee of strip A, yet the sole purpose of the conveyance was to give and receive water rights, and to provide for noninterference therewith; that the intention of the parties was for the grantor to retain the same right of way over the strip as he had prior to the conveyance; and that such right of way was a general and unrestricted right of way. Contrary to this interpretation, the plaintiffs contend that the reservation of "right of way for road purposes" restricted the rights of the grantor to a passageway "across" strip A, and that the location of this passage was established by usage through the gate in the fence bordering the highway. The lower court decided in favor of the plaintiff and the defendant contends on appeal that the trial court erred in construing the deed as limiting the right of access to the one rod strip of land leading to the fence gate; that the court erred in finding that defendant Christensen has no direct right of way across strip A; and that a restraining order issued by the court was so uncertain as to make compliance therewith impossible.

Since it is manifest that a grantee may receive only what a grantor has to give, defendants' rights are based upon a construction of the original Traugott deed ■ to plaintiffs' predecessor in interest. The issue is whether such deed reserved to the grantor a general and unrestricted right of way over strip A.

It is generally conceded that a deed is to be construed most strongly against the grantor, and most favorably to the grantee. *Henningsen* v. *Stromberg*, 124 Mont. 185, 221 P. 2d 438; *Little* v. *Mountain View Dairies*, Cal., 208 P. 2d 361; *Palmateer* v. *Reid*, 121 Or. 179, 254 P. 359. It is also established in this state that a deed should be construed so as to effectuate the intentions and desires of the parties, as manifested by the language made use of in the deed. *Coltharp* v. *Coltharp*, 48 Utah 389, 160 P. 121. Further, when the deed creates an easement the circumstances attending the transaction, the situation of the parties, and the object to be attained are also to be considered. *Stevens* v. *Bird-Jex Co.*, 81 Utah 355, 18 P. 2d 292. The deed in question granted a fee simple to Wood reserving a "right of way for road purposes across" the land conveyed. It is true that the objective of the grantee was to secure the land for water gathering purposes, but if the intent of the grantor was to use the land exactly as before, it seems more likely that an easement rather than a fee simple would have been granted to Wood.

The object of the easement reserved by Traugott was to obtain a way in and out of the remaining property. The words "for road purposes across" indicate a restricted rather than a general reservation and this is particularly true where, as in this case, the grantor owned the entire tract involved and only one means of ingress and egress was at that time necessary for proper utilization of the land. Where the provisions of a deed are doubtful the court may also look to the practical construction placed upon the instrument by the parties. *Jones* v. *Wilterding*, 100 Cal. App. 2d 210, 223 P. 2d 91; *Mulder* v. *Stands*, Idaho, 225 P. 2d 463; *King County* v. *Hanson Inv. Co.*, Wash., 208 P. 2d 113; A. L. I., Restatement, Property, Sec. 483, J. Defendants did cross over and along strip A at various places, but such actions were for the purposes of farming and not for the purposes of entering and leaving the premises. The record reveals that defendants acted in

such use of the strip with the permission of plaintiffs, and when interference with plaintiffs' rights resulted from such activities defendants upon demand were quick to rectify the situation. The construction of the fence and gate allowing ingress and egress was a practical construction of the deed by the parties and established the location of the right of way. Under these facts the trial court did not err in finding a restricted right of way and in fixing its location where it did.

The defendants' second assignment of error is that the court should have granted to defendant Christensen a direct right of way over strip A—that is, a right of way from tract C directly across tract A to the road. The question raised by this assignment, it should be noted, is not whether Christensen, should he secure access thereto, may use the decreed restricted way for ingress and egress. Indeed, plaintiff indicates in his brief that he would have no objection to his doing so. The contention of defendant Christensen is that even though the court did not err in refusing to decree to the defendants a general and unrestricted right of way over tract A, it nevertheless should have decreed to Christensen a right of way from tract C to the roadway. The contention must be rejected. A right of way founded upon deed or grant is limited to the uses of the extent thereof as fixed by the grant or deed. *Nielson* v. *Sandberg*, 105 Utah 93, 141 P. 2d 696. It is true, as stated by appellant, that a right of way appurtenant to an estate is appurtenant to every part of it and inures to the benefit of the owners of every part.

"Nevertheless, the partition of the dominant tenement cannot create a further or additional easement across a servient tenement, and an easement of way does not inure to the benefit of the owner of a parcel which after the division does not abut on the way; and where the resulting use will increase the burden upon the servient estate, the right to the easement will be extinguished." 28 C. J. S., Easements, § 65(b), p. 732.

It is clear that had the trial court decreed the right of way here claimed by Christensen, it would increase the burden upon the servient estate. That is to say, it would result in a substantial increase in the use of the servient estate other than that contemplated by the parties at the time of the grant. In *Stevens* v. *Bird-Jex Co.*, supra, we stated that in construing instruments creating easements, the court would look to the circumstances attending the transaction, situation of the parties, and the object to be attained. Applying these principles to the facts of this case, it is apparent the parties intended the right of way to create only a means of ingress and egress for the dominant estate as a whole. It is to be remembered in this connection that when the Traugott deed was executed in 1907, the entire Traugott tract and the surrounding area was used for farming purposes. The abnormal development of the use of the dominant estate brought about by the recent erection of defense installations in the area could not be found to be within the contemplation of either the grantor or the grantee in that deed. A division of the entire dominant estate into several lots, with the expectation that each portion would obtain a right of way over the servient tenement, could not be a use contemplated by the parties at the time of the grant and reservation. Hence, there was no error in denying Christensen a direct right of way over plaintiffs' land.

We address appellants' third assignment of error. The court entered a permanent injunction against the appellants restraining them 9, 10

"from molesting or using the said property in any manner contrary to the deed dated February 6, 1907, and requiring the defendants to remove any and all items which may pollute the water supply to a reasonable distance from said property."

It is agreed by the parties that a court restraint must be of sufficient clarity to notify those affected as to what act or acts are prohibited by such order. This, of course, does not mean that the court must spell out every minute

detail. Appellants contend that the provisions of the court's order are so uncertain and indefinite that it is impossible to determine what the court had in mind.

The injunction prohibited the use of such property in any manner contrary to the deed of February 6, 1907— which provided:

"The said grantor, his successors and assigns guaranteeing full protection to said pipe line from trees, shrubbery or willows or any thing that would hinder or obstruct the free flow of water in same, also full protection from barns, corrals, out houses or filth of any kind that would make the water unfit for culinary purposes."

The record reveals that appellants or their predecessors in interest at various times had corralled hogs near the well and that this action resulted in filth accumulating to the depth of several inches during these occasions.

In view of the provisions of the deed, the purpose of the conveyance, and the revelations of the record, it appears that the order was sufficiently certain and definite to inform defendants of its requisites. The lower judgment is affirmed. Costs to respondents.

WOLFE, C. J., and WADE and CROCKETT, JJ., concur.

HENRIOD, J., concurs in the result.