*This opinion is subject to revision before final publication in the Pacific Reporter*

**2019 UT 23**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

METROPOLITAN WATER DISTRICT OF SALT LAKE & SANDY,
*Appellant*,

*v.*

ZDENEK SORF,
*Appellee*.

No. 20160756
Filed June 11, 2019

On Direct Appeal

Third District, Salt Lake
The Honorable Robert P. Faust
No. 100921025

Attorneys:

Shawn E. Draney, Scott H. Martin, Danica N. Cepernich,
Rodney R. Parker, Salt Lake City, for appellant

Paul M. Belnap, Bradley W. Bowen, Alan R. Houston,
Salt Lake City, for appellee

CHIEF JUSTICE DURRANT authored the opinion of the Court, in
which ASSOCIATE CHIEF JUSTICE LEE, JUSTICE HIMONAS,
JUSTICE PEARCE and JUSTICE PETERSEN joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

## Introduction

¶1 Article XI, section 8 of the Utah Constitution and Utah Code section 17B-1-103 authorize the creation of quasi-governmental entities known as limited purpose local districts. The Metropolitan Water District of Salt Lake and Sandy (Metro) is one such district, created for the purpose of operating the Salt Lake Aqueduct (SLA). Metro owns land in fee and has various easements along the SLA corridor. One of these easements crosses the backyard of Zdenek

Sorf. Metro claims that it has authority to enact regulations over non-Metro district use of SLA corridor lands such as Mr. Sorf's. When Mr. Sorf made improvements to his property in violation of these regulations, Metro sued for injunctive relief, among other claims. Mr. Sorf filed a motion for summary judgment, arguing Metro's claims were not yet ripe. The district court granted his motion. Because we find that the parties' claims are ripe, we reverse and remand.

## Background

¶2    Metro owns and operates the SLA. The SLA transports water from the Deer Creek Dam to the Salt Lake Valley. Along the SLA corridor, Metro owns some property in fee and has easements over other portions. Mr. Sorf owns property encumbered by a Metro district easement. This easement was created by deed in 1946 by Elizabeth Colemere, the former property owner. This deed provides Metro an easement 125 feet wide "to construct, reconstruct, operate and maintain a pipeline or pipelines on, over and across" the property.

¶3    Metro also claims that, under Utah Code sections 17B-1-103 and 17B-1-301, it has additional authority to adopt regulations of SLA-related property. With this alleged authority, Metro has created a set of regulations, including provisions controlling non-Metro use of the SLA. These regulations prohibit construction of certain structures, and prohibit property owners from having trees and vines on the land covered by the easement.[1] Metro's regulations require property owners encumbered by Metro's easement to submit an encroachment application to Metro if they want to make any of these restricted improvements on their land.

¶4    Without Metro's approval, Mr. Sorf began making improvements to his property.[2] He removed some trees and landscaping and replaced them with a hot tub and gazebo. He added garden boxes, a water feature, and a shed. All of these improvements fall within the boundaries of Metro's easement. Mr. Sorf also replaced a cinder block wall with a wood fence and installed a gate in the fence to give Metro access. He installed another gate between

---

[1] Metro. Water Dist. Regulations 16-7(2) & 16-7(5)(a).

[2] At one point during the construction, Mr. Sorf submitted an encroachment application to Metro, but Metro denied it.

his backyard and his neighbor's backyard to provide additional access.

¶5    Metro filed suit in October 2010, seeking to enjoin Mr. Sorf's construction and receive a declaration about its authority to remove the improvements. Mr. Sorf defaulted, appealed to this court, and we vacated the denial of his motion to set aside the default judgment.[3] Mr. Sorf later filed an answer and counterclaim in the district court. Metro filed a motion for partial summary judgment, seeking a declaration that it had the regulatory authority it claimed. Mr. Sorf filed a cross-motion for summary judgment, claiming that Metro's claims were not ripe "because whether [Mr. Sorf] has violated [Metro's] easement rights or [Metro's] *necessary* rules and regulations cannot be determined until such time as [Metro] has an actual need to refurbish or replace the pipeline."

¶6    The district court granted Mr. Sorf's cross-motion. It found that Metro had an easement on Mr. Sorf's property, that there was no evidence that Mr. Sorf's improvements to the property unreasonably interfered with the aqueduct, and that Metro's "assertion of interference with its rights regarding the potential future refurbishment or replacement of the pipe [was] purely speculative." The district court dismissed Metro's claims as not ripe. Specifically, the district court found that "determining whether [Mr. Sorf] has unreasonably interfered with the easement will be entirely speculative until Metro has an actual plan to refurbish or replace the pipe under [Mr. Sorf's] backyard."

¶7 Metro appealed the district court's order. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(j).

**Issues and Standard of Review**

¶8    We must determine whether the parties' issues are ripe for resolution. We "review the [district] court's legal determination of ripeness under a correction of error standard."[4]

---

[3] *Metro. Water Dist. of Salt Lake & Sandy v. Sorf*, 2013 UT 27, ¶ 26, 304 P.3d 824.

[4] *Boyle v. Nat'l Union Fire Ins. Co.*, 866 P.2d 595, 598 (Utah Ct. App. 1993).

### Analysis

¶9   First, because we find that the parties' claims are ripe, we conclude that the district court erred in granting summary judgment based on ripeness. And because the district court did not conduct the proper analysis of the parties' respective rights to the easement, we remand to the district court for proceedings consistent with this opinion.

¶10  Although the district court's order contains some discussion about the rights of the parties, it ultimately dismissed the parties' claims on ripeness grounds. "A dispute is ripe when a conflict over the application of a legal provision has sharpened into *an actual or imminent clash of legal rights* and obligations between the parties thereto."[5] On the other hand, "[a]n issue is not ripe for appeal if there exists no more than a difference of opinion regarding the *hypothetical application of a provision* to a situation in which the parties might, at some future time, find themselves."[6]

¶11 But this is not a hypothetical situation. Mr. Sorf has made improvements to his property. Metro alleges it has the regulatory authority to prevent him from doing so without its approval and to force him to remove the structures from the property. The district court did not actually reach the issue of whether Metro has the regulatory authority it claims. Rather, it assumed that Metro had some power but that its power was limited by what is "necessary" for its operations. The district court then found that it could not determine what was "necessary" because Metro did not yet have a plan for future reconstruction of the SLA. Whether Metro has the regulatory authority it claims is, in part, determinative of whether it is entitled to injunctive relief against Mr. Sorf. If Metro does have this authority, Mr. Sorf has violated valid Metro district regulations, and Metro may seek a remedy. So the question of whether, and to what extent, Metro has the regulatory authority it claims is ripe for adjudication.

¶12 Additionally, even if Metro does not have this regulatory authority, the question of whether Mr. Sorf's additions to the

---

[5] *Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Lindberg*, 2010 UT 51, ¶ 40, 238 P.3d 1054 (internal quotation marks omitted).

[6] *Id.*

property encroach upon Metro's property rights remains. Metro has an easement that allows it "to construct, reconstruct, operate and maintain a pipeline or pipelines on, over and across" a portion of Mr. Sorf's property. The aqueduct has been constructed, the aqueduct remains operational, and Metro does not suggest that any of Mr. Sorf's repairs have interfered with the actual operation of the aqueduct underground. But the question is not whether Mr. Sorf has "unreasonably interfere[d] with the *aqueduct*." Rather, the question is whether Mr. Sorf has unreasonably interfered with Metro's *easement*, or in other words, Metro's ability to access the aqueduct for maintenance and repairs. This is a different question from whether Metro has access to the property generally. Metro does not claim that Mr. Sorf has denied access to his property. And the parties do not dispute that these structures are, in fact, constructed on Metro's easement. But the question left unanswered by the district court is whether Mr. Sorf's additions to the property have interfered with Metro's present right to access the aqueduct through its easement, for the purposes of ongoing maintenance.[7]

¶13 This is not a speculative inquiry. Although Metro's unspecified plan to reconstruct the aqueduct sometime in the future may be speculative, there is a live dispute regarding whether Mr. Sorf's improvements have unreasonably interfered with Metro's property rights. Metro has established rights based on an express easement. If Mr. Sorf has infringed upon that easement, Metro has a right to remedy that infringement. So the district court on remand must determine what the parties' respective rights and obligations to the property are.

¶14 In sum, the parties are both entitled to a determination of whether these additions are permissible, and if not, a determination of the proper remedy. Although Metro's future plans for modification and maintenance of the aqueduct may be speculative, both Metro and Mr. Sorf have present, existing rights in the property at issue. Mr. Sorf owns the property in fee and Metro has a right to

---

[7] Metro, as an easement holder, "has the right to access to repair and maintain its [aqueduct] as reasonably necessary in accordance with its use since time immemorial." *N. Union Canal Co. v. Newell*, 550 P.2d 178, 179 (Utah 1976) (citation omitted).

an easement on the property.[8] So an actual clash of legal rights and obligations exists between the parties, and their claims are ripe.

**Conclusion**

¶15 The district court erred in finding that the parties' claims were not ripe. And by failing to fully address the parties' claims, the court missed a critical piece of the analysis regarding whether Mr. Sorf's use of his land violated either Metro's regulations or the parties' respective easement rights. Because Mr. Sorf and Metro have present and competing interests in the land at issue, and Metro claims Mr. Sorf is currently violating its alleged regulatory authority, the issues presented in this case are ripe. We reverse and remand for additional proceedings.

---

[8] "[T]he owner of the fee title, because of his general ownership, should have the use and enjoyment of his property to the highest degree possible, not inconsistent with the easement." *Id.* And "the owner of the easement should likewise have the right to use and enjoy his easement to the fullest extent possible not inconsistent with the rights of the fee owner." *Id.*