**T. Harry HUMPHREYS, Appellant,**

v.

**AMERADA HESS CORPORATION,**
Appellee.

No. 73–1305.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Sept. 14, 1973.

Decided Nov. 16, 1973.

James G. Davidson, Tulsa, Okl., for appellant.

Joseph W. Morris, Tulsa, Okl. (Thomas W. Lynch, John S. Miller, and Robert S. Rizley, Tulsa, Okl., with him on the brief), for appellee.

Before SETH, McWILLIAMS and BARRETT, Circuit Judges.

SETH, Circuit Judge.

This is an action for damages arising from the refusal of defendant, Amerada Hess Corporation, to deliver stock under a stock option granted in 1968 to plaintiff, T. Harry Humphreys, who is now no longer employed by the corporation. From a jury verdict and judgment in favor of the corporation, Mr. Humphreys appeals.

Appellant Humphreys, an attorney, was a longtime employee of the former Amerada Petroleum Corporation. His tenure began in 1948 and prior to his termination he held the executive position of Manager of the Land Department. In 1968, pursuant to a plan adopted by Amerada to provide additional benefits for key employees and officers, Mr. Humphreys was offered and accepted an option to purchase 1,600 shares · of the corporation's common stock at a price of $87.70 per share.

Amerada Petroleum Corporation and Hess Oil & Chemical Corporation merged in 1969 to form Amerada Hess Corporation which is the defendant.

The merger did not affect the stock option other than to cause the substitution of Amerada Hess stock for the stock of Amerada. However, following the merger the emphasis of the corporation shifted away from Amerada's former objectives of exploration and production of oil and gas. One of the casualties of this change was Amerada's Exploration Department which included the Land Department of which Mr. Humphreys was the Manager. Accordingly he was advised in January 1970 that his position with Amerada Hess would terminate June 30, 1970. The details of the termination were formalized in a letter dated June 9, 1970, the first sentence of which read: "In accordance with our agreement, your employment by Amerada Hess Corporation will terminate on June 30, 1970." The corporation agreed to pay Humphreys $35,000.00, $10,000.00 on June 30, 1970, and the balance on January 15, 1971, in return for the release and discharge of "any and all claims, demands, causes of action, or liabilities of any kind . . . arising out of [his] employment or the termination of [his] employment." This was termination pay and not compensation for services. Mr. Humphreys acknowledged his acceptance of these conditions by signing his acceptance on the letter.

As agreed, Mr. Humphreys officially left Amerada Hess on June 30, 1970, and entered the private practice of law. He received the termination payments as scheduled, and since leaving he has performed no services for nor received any other remuneration from the corporation or any of its subsidiaries. The present controversy developed when Mr. Humphreys attempted to exercise his stock option in full on April 14, 1971, and was advised by Amerada Hess that by the terms of the plan under which it was granted, and the terms of the option itself, it had expired three months after Mr. Humphreys' termination of employment. The date when the option expired is thus the basic issue.

Appellant advances a number of constructions of the stock option and plan

which might enable him to exercise the option when he sought to do so and to prevail in this action. Most of these are possible only by an unnatural construction of the relevant language, and we find them to be without merit. We deem it necessary to consider only the contentions relating to the possible effects of his continuing tenure as Assistant Secretary to various subsidiary corporations of Amerada Hess to extend his eligibility to exercise the option. The contract is governed by the laws of Oklahoma.

As a function of his duties as Manager of the Land Department, Mr. Humphreys was designated "Assistant Secretary" of a number of wholly owned subsidiary corporations. These corporations existed primarily to facilitate business transactions in foreign countries, and the offices carried no additional duties or salary. They were evidently simply titles which enabled Mr. Humphreys to execute on behalf of these corporations the various instruments for which the Land Department otherwise had responsibility. The appointments in such positions were made in June 1969 for the following year or until his successor was duly appointed and qualified. Although the record leaves the matter unresolved, it will be assumed for the sake of argument that Mr. Humphreys was never formally replaced in all of these offices and thus technically held some of them on April 14, 1971, when he attempted to exercise his option.

Appellant's argument involves the following provisions of the option instrument:

"2. Exercise of Option. This option may be exercised by the Optionee in whole or in part, at any time or from time to time during the term of the option, provided, however, that this option may not be exercised (i) during the one year period commencing the date hereof, (ii) except as provided in paragraphs 3 and 4, at any time unless the Optionee is then an employee of the Corporation or of a Subsidiary, . . ..

. . . . . .

"4. Termination of Employment. In the event of the termination of the employment of the Optionee, other than by reason of death, he may . . . exercise this option at any time within three months after such termination but not after five years from the date of granting hereof, . . .."

In addition he cites the following paragraph of the stock option plan:

"3. Eligibility. Options may be granted only to key employees (which term as used herein includes officers) of the Corporation and of its present and future subsidiary corporations. . . ."

Relying on these provisions, Mr. Humphreys argues that because he was nominally Assistant Secretary of various subsidiary corporations at the time he attempted to exercise the option, he was an "employee" of the corporation as the term was defined in the plan and hence eligible to exercise the option. He then challenges the definition of the term "employment" with which the trial judge instructed the jury, asserting that it did not encompass the full breadth of the term as used in the option.

Traditional rules of contract interpretation accord primary significance to the mutual intent of the parties as it existed at the time the contract was formed. Where the contract is in writing and the language is clear and unambiguous, such intent must be determined from the words used. Oklahoma has expressly recognized these principles in its statutes and the trial court so ruled. Okla.Stat.Ann. tit. 15, §§ 152–154 (1966). Our reading of the stock option plan adopted by Amerada and the option granted to appellant Humphreys convinces us that nominal officers of either the parent or subsidiary corporations were never intended to be included, nor was the term "employment" ever in-

tended to include tenure in such nominal offices. The plan is captioned "Incentive Stock Option Plan for Key Employees of Amerada Petroleum Corporation and Its Subsidiaries." The record indicates that while Mr. Humphreys may formally have held the title of Assistant Secretary of various subsidiary corporations, he performed no official services or functions for any of these corporations following his departure from Amerada Hess on June 30, 1970. Such titles were simply expedients by which he could accomplish his former duties as Manager of the Land Department. In no sense could Mr. Humphreys have been considered a key employee or officer after the June 30, 1970, termination.

■■ The appellant as one of his principal points urges that the trial court improperly instructed the jury as to the meaning of "employment" or "employee" generally, and as used in the stock option agreement. The instruction given was a definition which stated: "An employee is one who is under the control of, performs services for and is paid by an employer for those services." The appellant urges that the instruction was not proper because he was in an executive capacity and had ". . . never been under the control of Amerada, insofar as the details of work performed." We find no merit in this position as any person in the position of Mr. Humphreys was under the direction of Mr. Hammond, the head of the Exploration Department, and of other officers of the Corporation. He was an "employee" of the company. The right to control was present, and this is sufficient. Phoenix Savings & Loan, Inc. v. Aetna Casualty & Surety Co., 427 F.2d 862 (4th Cir.). By his acceptance of the letter of June 9, 1970, from Mr. Hammond, who was the next in authority above him, his "employment" was expressly terminated on a stated date. He received no compensation for services rendered after the termination date. Thus the instruction was in accordance with the general use

of the term, and in accordance with the usage in exhibits.

■ We also hold that the instruction complained of was in accordance with the stock option. It was there combined with the term "officers." As quoted above, paragraph 3 of the option as to eligibility states that they ". . . may be granted only to key employees (which term as used herein includes officers) of the Corporation . . . ." It is apparent from the record that the options were for key employees. This was the main purpose and aim. The parenthetical reference to "officers" was to clarify the scope of the fundamental eligibility term. Being a key employee was the basic consideration. The trial court conveyed to the jury this fundamental requirement when it instructed that the mere fact a person was an officer, without more, did not necessarily mean that he was an employee. This instruction was directed to appellant's contention that even if he was but a nominal officer of a subsidiary, he was eligible to exercise the option. The instruction was proper under the proof submitted. See 2 Fletcher Cyc. Corps. § 266. The issue of employment was properly submitted to the jury under this and the other challenged instructions.

■ Mr. Humphreys also argues that the 1969 merger and consequent termination of the Land Department were extraordinary and unforeseen circumstances not provided for in the option. As such he would have us apply the rationale of Langer v. Iowa Beef Packers, Inc., 420 F.2d 365 (8th Cir.), to hold that the option remained in force despite the termination. We have carefully studied Langer and its companion case in the Iowa Supreme Court, Hilgenberg v. Iowa Beef Packers, Inc., 175 N.W.2d 353 (Ia.), and conclude that neither case applies to the instant facts. The terms of Mr. Humphreys' option adequately anticipated and provided for the possibility of the termination of his employment without cause. He received notice of his prospective termination some six months

before it became effective, and the option provided an additional three months following termination in which it could be exercised. He therefore had ample time in which to make his election, had he wished to do so.

The judgment is affirmed.